```
                  UNITED STATES DISTRICT COURT
                    DISTRICT OF CONNECTICUT

                                    :
JOHN MOORE,                         :
                                    :
      Plaintiff,                    :
                                    :
V.                                  :   CASE NO. 3:03-CV-1944(RNC)
                                    :
TOWN OF TRUMBULL & PAUL A.          :
KALLMEYER,                          :
                                    :
      Defendants.                   :
```

                        RULING AND ORDER

     Plaintiff left his longtime employment with the Town of

Trumbull in May 2003.  Six months later, he commenced this action

under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§

2000e, et seq., and state law, against the Town and its Director

of Public Works, Paul A. Kallmeyer, alleging that reprimands and

suspensions he received from Kallmeyer in the year preceding his

departure were racially motivated, created a hostile work

environment, and resulted in his constructive discharge.

Defendants have moved for summary judgment on all the claims in

the complaint.  After due consideration, the motion is granted

for substantially the reasons stated in defendants' memorandum of

law.

I.   Facts

     The pleadings, depositions, affidavits and other exhibits on

file, viewed most favorably to the plaintiff, show the

following.[1]  Plaintiff, an African-American, was employed by the Town as a custodian beginning in 1986.  He worked both at the Town Hall and the Town Library, and reported to the Maintenance Supervisor, who, in turn, reported to Kallmeyer, the Director of Public Works.

In 1990 and 1993, plaintiff was suspended without pay, once for verbal altercations with another employee, and once for submitting a claim for reimbursement of expenses based on an altered sales receipt whereby he tried to collect $200 more than he had actually paid.  As a result of the forged receipt incident, Kallmeyer lost confidence in plaintiff's credibility and no longer trusted him.

On a week-day afternoon in March 2002, plaintiff's car was rear-ended while he was driving on Main Street in Trumbull, the road he normally took to drive home from work.  The accident

---

[1] Plaintiff's Local Rule Statement [Doc. 23] fails to comply with Local Rule 56(a)(2) because it does not state in separately numbered paragraphs corresponding to the paragraphs contained in defendants' properly detailed Local Rule 56(a)(1) statement whether each of the facts asserted there is admitted or denied.  Nor does plaintiff's submission comply with the requirement that the party opposing summary judgment provide a list of disputed issues of material fact presenting a genuine issue for trial.  Plaintiff's statement merely lists facts as to which it is contended there is no such dispute.  Local Rule 56(a)(1) clearly notifies counsel that in these circumstances, the material facts alleged by the movant "will be deemed admitted."  D. Conn. Loc. R. Civ. P. 56(a)(1).  Accordingly, the facts set forth in defendants' thorough Local Rule 56(a)(1) statement are deemed admitted.  See Cashman v. Ricigliano, No. 3:02CV1423(MRK), 2004 WL 1920798, at *1 n.2 (D. Conn. Aug. 25, 2004).

occurred during his regularly scheduled work hours, 8:00 a.m. to 4:30 p.m.  The next day, he reported the car accident to his supervisor.  He claimed that the accident happened while he was taking Town mail to the main post office in downtown Bridgeport for mailing.  He subsequently left work complaining of neck pain and later filed a workers' compensation claim based on injuries he allegedly sustained in the accident.

When Kallmeyer found out about plaintiff's workers' compensation claim, he suspected that plaintiff was trying to defraud the Town again.  His suspicion was fueled by the fact that Town mail normally was transported from the Town Hall to the nearby Trumbull post office for mailing, rather than to the main post office in Bridgeport.  Accordingly, he decided to investigate.

After completing an investigation, Kallmeyer concluded that plaintiff left work early on the day of the accident without notifying anyone or getting permission, that he was not working when the accident occurred, that any injuries he sustained in the accident were unrelated to work, and that the workers' compensation claim was therefore fraudulent.

In July 2002, Kallmeyer confronted plaintiff at a meeting. Plaintiff refused to answer questions and left the room. Kallmeyer subsequently gave him a memorandum suspending him for five days without pay, requiring him to reimburse the Town for

3

$3,446.49 in workers' compensation payments, and notifying him that the next act he failed to perform in a satisfactory manner would result in his termination.

In August 2002, plaintiff's union filed a grievance claiming that the suspension was not supported by just cause.  Due to the filing of the grievance, no action was taken by the Town to obtain reimbursement from plaintiff.  The grievance was eventually settled after plaintiff left his employment with the Town.  Pursuant to the settlement, plaintiff's suspension without pay was reduced to two and a half days and the grievance was withdrawn with prejudice.

In July 2002, while Kallmeyer's investigation was pending, plaintiff received a written reprimand from Kallmeyer for failing to bring his pager to work on at least six occasions in the short time that had passed since he had returned to work following his injuries in the accident.  No grievance was filed regarding this matter.

In October 2002, plaintiff received another written reprimand and warning for failing to replace the light bulbs in four lights along the walkway outside the Town Hall.  He responded to this reprimand by telling Kallmeyer that the problem was faulty wiring, which was not his responsibility.  No request was made to have this reprimand rescinded, however.

On April 25, 2003, plaintiff was suspended by Kallmeyer for

4

two days without pay for insubordination.  This suspension was based on a complaint Kallmeyer received from the Director of the Town Library, who wrote a letter reporting that plaintiff had refused in a rude manner to do assigned work.  It was also based on plaintiff's failure to replace burned-out bulbs in lights along the walkway outside the Town Hall.  No grievance was filed concerning this suspension.

On April 29, 2003, Kallmeyer left a memorandum on the plaintiff's desk asking him to "[p]lease make sure" that a broken chair in a hallway at the Town Hall was placed in a dumpster and that a stack of bread trays on a rolling cart in the same hallway was removed.

On May 7, 2003, plaintiff submitted a written letter of resignation.  The letter stated, "I will be leaving for good; will be retiring on Friday, May 30th, 2003.  I have enjoyed working here; and will miss all of you."  Plaintiff now states that he left his employment "based on the fact that Kallmeyer's right ups [sic] and suspensions were leading up to my dismissal." Pl.'s Aff. ¶ 8.

II.  Discussion

    A.  Standard

Defendants' motion for summary judgment may be granted only if there is insufficient evidence to permit a jury to return a verdict for the plaintiff.  See Fed. R. Civ. P. 56(c).  In

determining whether summary judgment is warranted, the court must review the record as a whole, credit all evidence favoring plaintiff, give him the benefit of all reasonable inferences, and disregard all evidence favorable to defendants that a jury would not have to believe.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000).  Because the purpose of summary judgment is to isolate and dispose of claims that lack evidentiary support, plaintiff may not rest on the allegations of his complaint, but must point to evidence that would permit a jury to find in his favor.  See Morris v. Lindau, 196 F.3d 102, 109 (2d Cir. 1999).

    B.   Title VII

    1.   Disparate Treatment

Plaintiff's Title VII claim alleging disparate treatment based on race is evaluated in three steps.  See Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-56 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  The first question is whether he has established a prima facie case of discrimination by showing that 1) he is a member of a protected class; 2) was qualified for his position; and 3) suffered an adverse employment action; 4) in circumstances giving rise to an inference of discrimination.  See id. at 802.  Plaintiff's burden of establishing a prima facie case is "not onerous" but does require at least some evidentiary support.  Burdine, 450 U.S. at

6

253. If a prima facie case is established, the next question is whether the defendants have given legitimate, nondiscriminatory reasons for the adverse actions at issue in the case. See Reeves, 530 U.S. at 142. If so, the third question is whether plaintiff can prove that the reasons are a pretext or cover-up for discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993).

Defendants argue that plaintiff has no evidence to satisfy the fourth element of the prima facie case. In response, plaintiff states that Kallmeyer's treatment of him was "improper, hostile and racist" (Pl.'s Aff. ¶ 4), that when Kallmeyer spoke to him, he put his finger in the plaintiff's face, raised his voice and said the plaintiff "had to take whatever he dished out" (id. ¶ 5), that Kallmeyer "improperly threatened [his] salary based upon [a] mistaken belief that [he] falsely filed a workers compensation claim" (id. ¶ 6), and that his "daily working conditions in 2002 and 2003 were humiliating and disrespectful" (id. ¶ 9).

Even assuming that plaintiff's assertions are sufficient to satisfy his minimal burden of establishing a prima facie case, they are clearly insufficient to satisfy his ultimate burden of proving that the adverse actions at issue (i.e. the reprimands, suspensions and constructive discharge) were racially motivated. To support such a reasonable inference in the circumstances of

7

this case, plaintiff must offer at least some evidence that Kallmeyer's reprimands and suspensions were wrongful, or that Kallmeyer treated similarly situated white employees differently. No such evidence is cited in plaintiff's opposition papers or can be found in the record. Nor is there any evidence of any comments or conduct by Kellmeyer relating to race that might raise a question about his motivation.[2] Accordingly, defendants are entitled to summary judgment on this claim.

    2. <u>Hostile Work Environment</u>

Plaintiff also seeks redress under Title VII on the basis of the existence of a hostile work environment. <u>See</u> <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993). To withstand the motion for summary judgment on this claim, plaintiff must identify evidence in the record that would permit a jury to find (1) that he was subjected to discriminatory conduct and (2) that the conduct was severe or pervasive enough to create an

---

[2] The complaint alleges that Kallmeyer refused to help the plaintiff when he complained about being racially harassed by unknown white employees (Am. Compl. ¶ 28), but that allegation is both unsupported by plaintiff's testimony and refuted by undisputed facts. The incident in question involved a white sheet of plastic that hung from the ceiling to the floor near plaintiff's desk to keep dust out of the area during a construction project. In May 2001, plaintiff reported to Kallmeyer's assistant that two holes had been cut in the plastic sheet making it resemble a hooded sheet worn by members of the Ku Klux Klan. It is undisputed that the police were called without delay and plaintiff was given the rest of the day off. It is also undisputed that the police were unable to determine the identity of the person who cut the holes in the sheet.

8

objectively hostile or abusive working environment.  See Feingold v. New York, 366 F.3d 138, 149-50 (2d Cir. 2004).  Defendants contend that the evidence does not support a finding for the plaintiff on the first of these two elements, much less the second.  Plaintiff responds that his claim is supported by "[Kallmeyer's] conduct towards [him], including [Kallmeyer's] tone, pointing finger, raised voice and unbased [sic] charges of improper work performance."  Pl.'s Mem. Reply to Defs.' Mot. Summ. J. at 4.

As just discussed in connection with the disparate treatment claim, the evidence does not support a reasonable finding that the reprimands and suspensions plaintiff received from Kallmeyer were unfounded, or motivated by race, or that white employees were treated differently.  In the absence of such evidence, no reasonable jury could find that plaintiff was subjected to a hostile work environment based on race, even if Kallmeyer spoke to him in a manner that was objectively rude and obnoxious.

C.   State Law Claims

   1.   CFEPA

Plaintiff alleges that he was terminated because of his race in violation of the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60(a)(1).  Defendant contends that summary judgment should be granted on this claim because plaintiff cannot prove either that he was constructively discharged or that the

adverse actions preceding his decision to leave his employment were tainted by discrimination. In response, plaintiff asserts that but for the allegedly wrongful treatment he received from Kallmeyer and the Town, he would not have retired. Since the record does not support a reasonable finding of discriminatory conduct by Kallmeyer or the Town, plaintiff is not entitled to proceed on this claim any more than he is entitled to proceed on the Title VII claims.

2. Emotional Distress

Plaintiff's complaint includes a claim for intentional infliction of emotional distress, which requires proof of extreme and outrageous conduct, in other words, egregious misconduct exceeding all bounds of decency. See Appleton v. Bd. of Educ., 254 Conn. 205, 210-11 (2000). Defendants seek summary judgment on this claim on the ground that the conduct complained does not meet this stringent standard. Here again, plaintiff responds that his claim is supported by Kallmeyer's conduct, "including his tone, pointing finger, raised voice and unbased charges of improper work performance." Pl.'s Mem. Reply to Defs.' Mot. Summ. J. at 4.

The charges of improper work performance do not provide a basis for recovery on this claim. As discussed above, no reasonable juror could find that the reprimands and suspensions plaintiff received from Kallmeyer were unfounded in fact or based

on plaintiff's race.  That being so, no reasonable juror could condemn them as extreme and outrageous.

Crediting plaintiff's remaining allegations, they fall far short of raising a genuine issue for trial.  A supervisor's offensive "tone, finger pointing and raised voice" when speaking with an employee, although rude and obnoxious, does not support liability for extreme and outrageous conduct as a matter of law.

III. <u>Conclusion</u>

Accordingly, defendants' motion for summary judgment is hereby granted.  The Clerk may close the file.

So ordered.

Dated at Hartford, Connecticut this ___ day of November 2005.

                              \s_____
                                Robert N. Chatigny
                        United States District Judge